[No. E030046. Fourth Dist., Div. Two. Apr. 8, 2002.]

BURRTEC WASTE INDUSTRIES, INC., Plaintiff and Respondent, v.
CITY OF COLTON et al., Defendants and Respondents;
TAORMINA INDUSTRIES, LLC, Real Party in Interest and Appellant.

1134

COUNSEL

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Edward J. Casey and Maureen F. Gorsen for Real Party in Interest and Appellant.

Gresham, Savage, Nolan & Tilden, John C. Nolan and Jennifer M. Guenther for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

GAUT, J.—

### 1. *Introduction*

Two competing trash companies, Taormina Industries, LLC, and Burrtec Waste Industries, Inc., are both engaged in solid waste recycling and disposal. In this appeal, they argue about whether the City of Colton complied with CEQA, the California Environmental Quality Act,[1] when it approved a mitigated negative declaration (MND) and issued an amended conditional use permit (CUP) to allow Taormina to operate a solid waste facility in Colton.

In 1999, the city approved a CUP for Taormina to operate a materials recycling facility. In 2000, Taormina sought an amended CUP allowing it to process solid waste. The city approved the amended CUP on October 10, 2000.

In its writ petition to the superior court, Burrtec alleges the notice of intention (NOI) to adopt an MND was not properly posted as required by sections 21092 and 21092.3. As a result, Burrtec did not find out about the application for the amended CUP until after it was too late to comment on the application or to appeal the decision of the city to approve it.

The superior court first ruled Burrtec has standing. The court then granted the first cause of action of Burrtec's writ petition on the grounds that there is insufficient evidence the NOI was properly posted. Taormina, as the real party interest, appeals from the judgment, challenging the court's granting of

---

[1] Public Resources Code section 21000 et seq. Unless otherwise stated, all statutory references are to the Public Resources Code.

the writ petition on the first cause of action. We hold Burrtec has standing and the evidence of posting the CEQA notice was insufficient.

## 2. *Standing*

■ The appellate court reviews the superior court's ruling on standing using the substantial evidence test.[2] As a general rule, standing requires a party to have a beneficial interest, a private or particular interest independent of the public at large.[3] But "where a public right is involved, and the object of the writ of mandate is to procure enforcement of a public duty, the plaintiff is not required to have any legal or special interest in the result; it is sufficient that as a citizen he is interested in having the public duty enforced. [Citation.] Accordingly, in a writ of mandate against a municipal entity based on alleged violations of CEQA, a property owner, taxpayer, or elector who establishes a geographical nexus with the site of the challenged project has standing. [Citations.] Moreover, the geographical nexus can be attenuated . . . because '[e]ffects of environmental abuse are not contained by political lines.' "[4]

■ In considering Taormina's challenge to Burrtec's standing, the superior court analyzed *Waste Management of Alameda County, Inc. v. County of Alameda.*[5] In that case, the court held a waste disposal company's commercial and competitive interests were not within the zone of interests CEQA was intended to preserve or protect, and thus could not serve as a beneficial interest for purposes of a mandamus challenge to the solid waste facility permit granted to a competitor.[6] More specifically, the court said: "[T]o permit a for-profit corporation to maintain a citizen's action for personal economic and competitive purposes, rather than out of demonstrable environmental concerns, would conflict with the legislatively declared policy that environmental review be carried out in the most efficient

[2]*Berclain America Latina v. Baan Co.* (1999) 74 Cal.App.4th 401, 404-405 [87 Cal.Rptr.2d 745].

[3]Code of Civil Procedure section 1086; *Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 158 [217 Cal.Rptr. 893], citing *Kappadahl v. Alcan Pacific Co.* (1963) 222 Cal.App.2d 626, 643 [35 Cal.Rptr. 354], disapproved on other grounds in *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 517, footnote 16 [113 Cal.Rptr. 836, 522 P.2d 12].

[4]*Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo, supra,* 172 Cal.App.3d at pages 158-159, quoting *Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 272 [118 Cal.Rptr. 249, 529 P.2d 1017].

[5]*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223 [94 Cal.Rptr.2d 740].

[6]*Waste Management of Alameda County, Inc. v. County of Alameda, supra,* 79 Cal.App.4th at page 1229.

and expeditious manner in order to conserve financial, governmental, physical, and social resources for application toward mitigation of actual significant effects on the environment."[7]

In deciding that Burrtec has standing to bring a citizen's suit, the superior court acknowledged that Taormina and Burrtec are competitors. But the court found a distinction from *Waste Management* as follows: "Waste Management's sole concern was one of commercial competitiveness. . . . [¶] However, we are dealing with a different situation. We're dealing only with the question of whether proper notice was given before the action was taken. Proper notice is not confined to notifying the Real Party in Interest . . . but notifying the public in general because that's the purpose of these notices is to give the public an opportunity to be aware, have knowledge of what is going on, so they can appear and make their concerns known in a public forum. [¶] . . . The whole spirit of CEQA is to give the public notice of what we're doing, if you want us to do it or not, and apparently this was allegedly not done, and if it was not, it is a genuine public concern. [¶] It is not confined to any commercial interest of the Petitioner. There are no commercial interests at all alleged within the first or second cause of action . . . . [¶] . . . [T]here [are] no allegations of wrongdoing or failure by the City of Colton other than those which deal with public interests and the protection of the public, the right to know, the right to be heard, the right to express their opinion. This is certainly not confined to the Petitioner's interest, and I think it is a real public interest, as Waste Management pointed out, as necessary in order to establish a citizen's standing to bring these actions."

Burrtec is a taxpayer and a property owner that has established a geographical nexus by alleging in the complaint that it exists close to Taormina's Colton site. Taormina, however, asks this court to deny standing to Burrtec because it is a corporation, not a citizen, and a business competitor. CEQA litigants often may be characterized as having competing economic interests.[8] But, under CEQA, a corporation is a person entitled to receive notice and to bring a suit for noncompliance.[9] Furthermore, as noted by the trial court, the interest asserted by Burrtec in its writ petition is not a commercial one but an issue involving the adequacy of the public notice required by CEQA. Where a plaintiff seeks by mandamus to enforce a public duty, especially under CEQA, standing is properly conferred: "[S]trict rules

[7]*Waste Management of Alabama County, Inc. v. County of Alameda, supra,* at page 1239, citing section 21003, subdivision (f).
[8]See *Cadiz Land Co. v. Rail Cycle* (2000) 83 Cal.App.4th 74, 81-82 [99 Cal.Rptr.2d 378].
[9]Section 21066.

of standing that might be appropriate in other contexts have no application where broad and long-term effects are involved."[10]

*Waste Management* does not compel a different result. Sufficient evidence supports the superior court's determination that the express beneficial interest asserted by Burrtec is not rank commercialism but rather the need for public notice under CEQA. The record establishes Burrtec has a genuine and continuing concern for environmental matters and for compliance with the CEQA process. According to Eric Herbert, a Burrtec officer, the company encourages and monitors environmental compliance, including CEQA determinations, by itself and other waste companies in Southern California. Burrtec even reviewed the initial approval of Taormina's Colton site although it did not comment on it. Using the primary factor of a demonstrated environmental concern, as identified in *Waste Management*,[11] we hold Burrtec meets the test, under the particular circumstances of this case, for being allowed to bring a citizen suit as a corporation.

### 3.   *Posting of the NOI*

■   This court has previously explained the standard of review for CEQA cases at both the trial and the appellate level: "[T]he issue before the trial court is whether the agency abused its discretion. Abuse of discretion is shown if (1) the agency has not proceeded in a manner required by law, or (2) the determination is not supported by substantial evidence. [Citations.] [¶] . . . [¶] On appeal, the appellate court's 'task . . . is the same as that of the trial court: that is, to review the agency's actions to determine whether the agency complied with procedures required by law.' [Citation.] The appellate court reviews the administrative record independently; the trial court's conclusions are not binding on it. [Citations.]"[12] Therefore, we are charged with deciding if the city proceeded according to law and whether its determination approving the amended CUP is supported by substantial evidence. We specifically consider whether the NOI was posted.

■   Section 21092.3 requires: "The notices required pursuant to Sections 21080.4 and 21092 for an environmental impact report shall be posted in the office of the county clerk of each county in which the project will be located and shall remain posted for a period of 30 days. The notice required pursuant to Section 21092 for a negative declaration shall be so posted for a period of 20 days, unless otherwise required by law to be posted for 30 days. The county clerk shall post the notices within 24 hours of receipt."

---

[10]*Bozung v. Local Agency Formation Com., supra,* 13 Cal.3d at page 272.

[11]*Waste Management of Alameda County, Inc. v. County of Alameda, supra,* 79 Cal.App.4th at page 1238.

[12]*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375-1376 [43 Cal.Rptr.2d 170].

According to Taormina, Burrtec conceded below that the required posting occurred. We disagree Burrtec made such a concession or that the record supports that a posting occurred. The administrative record shows that, in 1999, when Taormina applied for the original CUP, Wanda Molton, an administrative secretary for the city, delivered an NOI by facsimile transmission to the San Bernardino County Clerk for posting 20 days before the public hearing. In contrast, the administrative record does not show that, when Taormina applied for the amended CUP, the city delivered the NOI dated September 1, 2000, for posting to the clerk. The only reference to "posting" appears on a "Notice of Public Hearing" dated September 28, 2000, and announcing a hearing on October 10, 2000, concerning the MND. There is no indication in the administrative record that either the NOI or the Notice of Public Hearing was ever delivered to the clerk of the board of supervisors for posting.

To cure this omission, Taormina submitted two declarations to the trial court. Lisa Banuelos, an associate planner with the city, stated that she is exclusively responsible for distributing NOI's. Her custom and practice is to place "one copy of the NOI in a regular-sized envelope addressed [to] the attention of the Clerk of the Board of Supervisors." Banuelos asserted she followed the same procedure with the NOI dated September 1, 2000. She also particularly remembered this NOI because the project description was wordier than the ones she prepares. Banuelos does not explain why a different procedure was followed with the original NOI when Wanda Molton delivered the document by facsimile transmission.

John Ravgiala, the deputy clerk of the Board of Supervisors of San Bernardino County, generally described the method for posting an NOI as follows: "I date stamp the notice and post the original notice on the cork bulletin board in the alcove around the corner from the Clerk's counter. All NOIs are clipped together with a large black clip and hung on two thumbtacks . . . . The public is free to thumb through these notices without any assistance from the Clerk's staff. I periodically remove the NOIs that are older than 30 days."

In its ruling, the superior court applied the presumption of Evidence Code section 664 to decide that the notice of hearing dated September 28, 2000, was properly mailed and posted. But, as to the NOI, the court observed that the two declarations were not part of the administrative record. Furthermore, the declarations contained no information about when the NOI may have been mailed or posted. Therefore, the court refused to use the presumption of Evidence Code section 664 to cure this deficiency in the record. The court

then ruled the NOI was not adequate under sections 21091, subdivision (b), and 21092.3, which together require that the NOI shall be filed and posted in the office of the county clerk for 30 days. For the foregoing reasons, the court found the city abused its discretion by approving the amended CUP. The court granted the petition for a writ of mandate, ordering the approval be set aside. The record supports the trial court's finding the proper posting and notice were not accomplished.

In applying the CEQA standard of review, there is no presumption error is prejudicial.[13] But the absence of evidence to show the NOI was posted means the city may have been deprived of "information necessary to informed decisionmaking and informed public participation."[14] Burrtec and other interested parties could not comment on the proposed MND. The objective of CEQA to allow public comment was not satisfied: "[W]here the lack of notice, as here, results in a failure to elicit a response to the negative declaration, the prejudice is manifest."[15]

## 4. *Disposition*

The superior court properly set aside the city's adoption of the MND and the approval of the amended CUP. We affirm the judgment and award costs to Burrtec as the prevailing party.

Ramirez, P. J., and McKinster, J., concurred.

---

[13]Section 21005, subdivision (b).

[14]*Fall River Wild Trout Foundation v. County of Shasta* (1999) 70 Cal.App.4th 482, 493 [82 Cal.Rptr.2d 705].

[15]*Fall River Wild Trout Foundation v. County of Shasta, supra,* 70 Cal.App.4th at page 492.